[No. 1545.]

# RENO WATER, LAND AND LIGHT COMPANY (a Corporation), Respondent, v. R. S. OSBURN, et al., as the City Council of the City of Reno, Appellants.

Municipal Corporations—Construction of Water Works—Powers of City Council—Bids. Under section 35 of the act incorporating the town of Reno (Stats. 1897, p. 50), providing that, where the electors have authorized the city council to construct a system of water works and an electric light plant, the council shall invite written proposals, with plans and specifications, for the construction of such system and plant, and section 16 of the act providing that laws not inconsistent with the charter shall remain in force, the provisions of the act of February 19, 1867 (Stats. 1867, p. 59), requiring boards of county commissioners, in letting contracts amounting to $500 or more, to advertise and let them to the lowest responsible bidder, and when plans and specifications are to constitute a part of such contract to state in the notice where the same may be seen, is inconsistent with the charter, for the reason that the charter provision commits to the council a discretionary power to determine which system is the best and introduces an element inconsistent with competitive bidding upon plans and specifications previously adopted.

Idem—Idem—Effect of Modification of Plans and Specifications. It is no ground for complaint that a city council, after having advertised for plans and specifications for a system of water works, together with a bid for constructing the system described in them, made an agreement with one of the bidders by which the plans and specifications and bids were modified, where the modification was for the advantage of the city.

Practice on Appeal—New Trial—Identification of Record. An exhibit in the record on appeal will be stricken out unless it is identified by the endorsement of the trial judge as having been read or referred to on the hearing of the motion for new trial.

Idem—Civil Practice Act Construed. The formal decision required to be filed after the trial of an issue of fact by the court under section 182 of the civil practice act is different from the written opinion of the court mentioned in section 340 of the same act.

Appeal from the Second Judicial District Court, Washoe County; *A. E. Cheney*, District Judge.

Action by the Reno Water, Land and Light Company against R. S. Osburn, and others, as the City Council of the City of Reno, for an injunction. From a decree for the plaintiff, defendants appeal. Reversed.

The facts sufficiently appear in the opinion.

*Torreyson & Summerfield*, for Appellants:

I.   The court erred in ruling, holding and finding, that

the law requires appellants to first adopt specific plans and specifications and then to compel all bids to conform thereto. This is the overshadowing question in this case. An examination of the rulings of the court will show that the conviction that the antecedent adoption of plans and specifications before the advertisement for bids was ever uppermost in the mind of the learned judge. On the contrary, appellants steadfastly and earnestly insisted, and still insist, that it was its plain duty to invite bids "with plans and specifications," and not without plans and specifications. The latter course was pursued by appellants and the decision of the trial court shows that practically all of it is devoted to ascribing reasons why the appellants' course was radically wrong.

II. The act to incorporate the town of Reno, approved March 8, 1897 (Stats. 1897, p. 50), is a special act, complete and independent, requiring no aid from any other statutes, and in which the legislative mind was especially drawn to the subject matter contained in it. The trial court, however, held persistently that the general act of February 19, 1867 (Gen. Stats. 1972), is of controlling effect in the case at bar. It will be observed that the act of 1867 is entitled "An act supplementary to an act entitled 'An act to create a board of county commissioners in the several counties of the state, and to define their duties and powers,'" and that its context relates only to contracts to be let by boards of county commissioners in which counties are interested parties. This clearly appears by reason of its reference to the provisions of the twenty-third section of the act of which it is supplemental. "The provisions of a special charter or a special authority derived from the legislature are not affected by general legislation on the subject. The two are deemed to stand together; one as the general law of the land; the other as the law of the particular case." (*State* v. *Stoll*, 17 Wall. 425; 1 Dillon on Municipal Corporations, 4th ed., secs. 87 and 88, and cases there cited.)

III. The authorities are numerous that a special act is not modified or controlled by a subsequent general act upon the same subject unless the latter clearly manifests on its face such intention. (*Mobile R. R. Co.* v. *State*, 29 Ala. 573;

*Home for Inebriates* v. *Reis*, 95 Cal. 142; *Van Denburg* v. *Greenbush*, 66 N. Y. 795.)

IV. The act of March 8, 1897 and the act of February 19, 1867, are not *in pari materia*. Neither is any part of the special act *in pari materia* with the general act of 1867. The act of 1867 specifically relates to county contracts, and is general legislation. Section 35 of the act of 1897 is a section of a special charter act, and relates only to contracts of a specially created municipality.

V. *Expressio unius exclusio alterius.* This well-settled rule of statutory construction is peculiarly applicable to the contention of appellants that section 35 of the act of 1897 provides a specific mode to be pursued in advertising for bids and that such provision necessarily excludes all other modes. "The mention of one person or thing is in law an exclusion of all other things or persons." (*V. & T. R. R. Co.* v. *Elliott*, 5 Nev. 296; *Doctor* v. *Hartman*, 74 Ind. 221; *Quincy R. R. Co.* v. *Kellogg*, 54 Mo. 334; *Page* v. *Allen*, 58 Pa. St. 241; *Koch* v. *Bridges*, 45 Miss. 247; *Watson* v. *Corey*, 6 Utah, 150.)

VI. Section 35 of the act of 1897 specifically provides that the published invitation for the submission of bids shall be for such submission with plans and specifications. This provision of law certainly excludes the submission of bids without plans and specifications. The learned trial court laboriously attempts to fortify its conclusion that adopted plans and specifications must antedate and precede advertisements for bids for holding and finding that section 16 of the act of 1897 adopts the act of February 19, 1867, and makes it applicable to section 35 of the said act of 1897. If such is the case, what is the significance of the words "with plans and specifications" in section 35 of the act of 1897? If the conclusion of the trial court is true, they are the veriest surplusage. It must appear beyond cavil or dispute that they were placed in the act *ex industria* and not as ornamental surplusage. It is respectfully submitted that the law clearly requires bids to be "with plans and specifications," and that the finding of the court that they must be without plans and specifications is grossly erroneous and the mental process by which the learned judge arrived at his conclusion are simply inexplicable.

VII.   The court erred in ruling, holding and finding that appellants had no authority to modify the terms of the accepted bid.   It is not denied, and, in fact, is admitted that the bid of Schaw, Ingram, Batcher & Co. was the lowest bid in its unchanged form.   It is also undisputed that in the judgment of appellants the modifications were in the interest of the city of Reno and not of the bidders.   It is not claimed that such was not true as a matter of fact.   It is admitted that after the award of bids it is often prudent and lawful to depart from the original plans and specifications.   Nothing can be legally done by indirection which may not be done directly.   The true rule is that where changes and modifications are made which are clearly and palpably in the interest of the people, and not in the interest of bidders, they are not illegal, but, on the contrary, are commendable.   Much must be left to the discretion and honest judgment of an administrative board, and they will not be hampered by the courts and enmeshed in purely technical webs where their acts are indisputably honest, prudent, and for the popular weal.   It is respectfully submitted that great public enterprises should not be strangled by fastidious contentions.   In every essential particular appellants have obeyed the law.

VIII.   Under the reservation in the stipulation respondent moves the court to strike from the transcript on appeal all papers therein contained except the judgment roll, statement on motion for a new trial, notice and undertaking on appeal, and the clerk's certificate attached to the record.   The motion is made upon the ground that the other parts of the transcript do not constitute any part of the transcript on appeal, for the reason that they are embraced in the statement on motion for a new trial, and are not endorsed as having been read or referred to on the hearing of the motion for a new trial.   The effect of this motion, should it prevail, would be to strike from the record the decision of the learned judge who tried the case in the court below, and who now makes the motion to strike his decision from the record on appeal, and two certain stipulations between the respective counsel and filed on the 27th day of June, 1898, and on the first day of July, 1898, respectively.

IX.   Appellants in their assignment and specification of

errors gave notice to respondent that on the hearing of the
motion for a new trial they would refer to and use the rec-
ords, pleadings, papers and files in the case.   The omission
of the clerk to endorse the papers moved to be stricken out
as having been read, used or referred to at the hearing of the
motion is merely a clerical omission and is cured by the cer-
tificate of the clerk which certifies that the papers are the
original papers in the action.   The clerk further certifies that
the papers included in the transcript "constitute in whole
the record on appeal."   The decision of the trial court is
referred to in the statement on motion for a new trial.   The
statement including this reference is certified to by respective
counsel that it "constitutes a full, true and correct copy of
the statement on motion for a new trial."   The decision of the
trial court which includes its findings is sufficiently identi-
fied, as above indicated, to comply with all statutory require-
ments and is properly in the record and before this court.
Where papers in a case are certified to constitute in whole or
in part the record on appeal they are properly before the
supreme court.   (*Holmes* v. *Iowa Mining Co.*, 23 Nev. 23;
*Streeter* v. *Johnson*, 23 Nev. 199.)

X.   Even though the papers be stricken out, still the ques-
tion of the correctness of the judgment and order may be
determined from the judgment roll.   (*Peers* v. *Reed*, 23 Nev.
407.)   The complaints do not state such facts as warrant
the judgment of the trial court.   It is admitted in this case
that the judgment and order of the trial court must stand
or fall upon abstract questions of law alone.   If the court
interpreted the law correctly, it will be sustained.   If its view
of the law was incorrect, its judgment cannot be upheld.
(*Beck* v. *Thompson*, 22 Nev. 119; *White* v. *White*, 6 Nev. 20;
Hayne on New Trial and Appeal, sec. 145.)

XI.   The gist of respondent's contention is that the words
with plans and specifications constitute a "fugitive expres-
sion" and "must be ignored entirely."   Such disposition of
the words is certainly the only way in which respondent's
principal argument can be sustained or the judgment of the
lower court upheld.   But it is a well-settled principle of
statutory construction that no words of a statute should be
rejected as mere surplusage if such consequences are not

imperatively required. (*Torreyson* v. *Board of Examiners*, 7 Nev. 19.)

XII. It matters not what courts may think of the policy of statutes. If they are plain and unambiguous, the legislature must be understood to mean what it has explicitly expressed and there is no room for construction. (*Odd Fellows' Bank* v. *Quillen*, 5 Nev. 283.) No argument that can be advanced can make it plainer that the words "with plans and specifications" were placed in the statute *ex industria* and not as a "fugitive expression" than a reading of the statute itself. The presumption cannot be reasonably entertained that the legislature in framing the most important section in the act and having in view the especial subject of the construction of municipal water works used a "fugitive expression" in prescribing the important method of procedure to be followed by appellants in letting the contract for their construction.

*Curler & Curler, A. E. Cheney* and *O. J. Smith*, for Respondent:

I. All the papers found in the record or filed on appeal (except the judgment roll, statement on motion for a new trial, order denying a new trial, notice and undertaking on appeal and clerk's certificate) should be stricken out, on the ground that they constitute no part of the record on appeal, for the reason that they are not made a part of the statement on motion for a new trial, and are not endorsed as having been read, used or referred to on the hearing of the motion for a new trial. It is no longer a debatable question that findings, to be considered on appeal, must be embraced in the statement on motion for a new trial. (*Peers* v. *Reed*, 23 Nev. 404.) And this rule has not been changed by the statute permitting the original papers to be sent up on appeal. (*Streeter* v. *Johnson*, 23 Nev. 194.)

II. Was there a compliance with the statutory requirements in letting the contract to construct a water system for the city of Reno, to Schaw, Ingram, Batcher & Co.? In this connection there will be no attempt to review or restate the principles or authorities upon which the district court rendered its decision. The presumption is that the action of the district court was correct. Its findings of facts are not sub-

ject to review upon the record before this court.  The author-
ities upon which its action is based are not criticised, and
their inapplicability is not shown.  The failure to refute
either the principles of law or the adjudicated cases upon
which the district court acted is an admission that they can-
not be successfully assailed.

III.  The proposition announced by appellants, viz.:  "A
special act is not modified or controlled by a *subsequent* gen-
eral act upon the same subject, unless the latter clearly man-
ifests on its face such intention," is, probably, true, and the
authorities cited by counsel seem pertinent to that statement.
But that is not the proposition now before this court.  Here
the question is whether a special act incorporating a city
which authorizes the making of public improvements, and
expressly continues in force all prior laws "not inconsistent"
with its provisions, repeals a prior statute which was in force
in the city respecting the methods of letting contracts for
public improvements, when the two are capable of being both
sustained?  The difference in the two propositions is material.
As stated by appellants, it would be incumbent on us to show
that a general law had repealed a prior special act, by impli-
cation, while the fact is that it is for the appellants to show
that there is such an irreconcilable conflict between the pre-
vious general act and the later special act that an intention
to repeal the former by the latter is the only construction
possible to be given to the latter enactment.

IV.  The law applicable to this case, and the caution with
which it is to be applied, is well stated by Judge Dillon:
"The presumption is not lightly to be indulged that the
legislature has by implication repealed, as respects a partic-
ular municipality or as respects all municipalities, laws of a
general nature, elsewhere in force throughout the state; yet
a charter or special act passed subsequent to the general law,
and plainly irreconcilable with it, will, to the extent of the
conflict, operate a repeal of the latter by implication.  But
by a well-known rule founded on solid reasons such repeals
are not favored; and the principles of implied repeals ought
to be applied with extreme caution."  (1 Dill. Mun. Corp.,
3d ed., sec. 88.)

V.  As stated in *State* v. *Stall,* cited by appellants, "If, by

any reasonable construction, the two statutes can stand together, they must so stand. · If harmony is impossible, and only in that event, the former law is repealed in part or wholly, as the case may be." (17 Wall. 431.)

VI.   Pertinent rules of construction have been declared by this court. "There can be no doubt but that, whenever the interpretation of a statute or a constitution in a certain way will result in manifest injustice, courts will always scrutinize the statute or constitution closely to see if it will not admit of some other interpretation; for it is not to be supposed that any legislative body passes an act for the purpose of doing a manifest wrong." (*State* v. *Kruttschnitt*, 4 Nev. 178.) "It is not unfrequently the case that the general object or purpose is perfectly clear, whilst the details and means prescribed for carrying such purpose into execution are crude and contradictory. Hence, in the interpretation of any phrase, sentence or section of a law, the first thing to be ascertained is the ultimate and general purpose of the legislature in the enactment of the law. When that is known or ascertained, then every sentence and section of the entire law should be interpreted with reference to such general object, and, with view to giving it full and complete effect, extending it to all logical and legitimate results. That object must, of course, be ascertained from the act itself. But the whole act must be taken together, and when the general object is apparent, any fugitive expression, or any sentence which it is impossible so to interpret as to make it accord with and further such general object, must be ignored entirely." (4 Nev. 57.)

VII.   There can be no doubt that the legislature intended that water works for the city of Reno, if constructed, must be let to the lowest bidder therefor. There must be an advertisement and a letting to the lowest bidder. And if all the bids are rejected, as they may be, the city council must " readvertise as provided by law in similar cases." (Stats. 1897, sec. 35. p. 80.) " This general object is apparent, and any fugitive expression, or any sentence which it is impossible so to interpret as to make it accord with and further such general object, must be ignored entirely." It being absolutely necessary to the making of a lawful contract that there be a letting to the lowest bidder, it will not be held, if

any other construction of the statute is possible, that the legislature intended to adopt a method of letting the contract which makes it impossible to ascertain who is the lowest bidder, for it is grounded in good sense, as well as in the law, that there can be no comparison and no knowing who is the lowest bidder unless there is a bidding upon a common basis, separate offers to do the same thing, of the same material and in the same manner. This essential element of competitive bidding, counsel for appellants persistently ignore.

VIII.   Under the provisions of the general act for the letting of contracts for public improvements, where they exceed $500 in value (Gen. Stats. 1972), it is clearly contemplated that a contract for such work may be let either with or without plans and specifications. If plans and specifications are to be used to describe and designate the nature and extent of the work, then the notice must designate where they are to be found. Such a bidding would be "with plans and specifications." But, to constitute a proposal to construct water works "with plans and specifications," it is not necessary to conclude that there must be an identity of time. The reasonable construction of the phrase, "with plans and specifications," having in view the object of the act, the presumed intent of the legislature to protect public interests, the provisions of the General Statutes recognizing bidding with and without plans and specifications, is that the legislature intended that a work of this magnitude should not be let except by competitive bidding upon previously adopted plans and specifications. But inquiry as to possible or probable meanings of words is unnecessary under the settled rules of statutory construction. If the word "with" or the phrase "with plans and specifications," as used in the city charter, is not in harmony with the general object of the whole act, the plain and just purpose and intention to protect the public and prevent fraud and favoritism by requiring a letting of the work to the lowest bidder, then that word, or the phrase, in the language of this court, "must be ignored entirely."

IX.   The claim of counsel for appellants, that the word "laws," used in section 16 of the city charter in connection with "ordinances," means "local by-laws of the town of Reno,"

is rather startling. If a municipal corporation has any "local by-laws" other than such ordinances as it enacts, I am quite ignorant of their origin and character. Dillon says: "Indeed, in general and professional use the term *ordinance* is almost, if not quite, equivalent in meaning to the term *by-law*, and is the word most generally used to denote the by-laws adopted by municipal corporations." (Dill. Mun. Corp., 3d ed., sec. 307.) "Laws" and "by-laws" have well-known distinct meanings. In the absence of an express declaration of an intent to preserve all laws not inconsistent with the city charter, they would be retained by operations of law. But that there might be no question that all laws, general and local—all "laws and ordinances"—were to remain in full force except when inconsistent, section 16 of the city charter was adopted. There is nothing to construe in the language employed, and nothing to warrant the contention that when the legislature said "all laws" they meant "all by-laws," especially when it used, in connection with the words "all laws," the term "ordinances," which is the equivalent of "by-laws"—a construction the equivalent of saying "All by-laws and by-laws" not inconsistent herewith are to remain in full force in the city of Reno.

X. Counsel are mistaken when they state that it is admitted that the bid of Schaw, Ingram, Batcher & Co. was the lowest, or that the alterations were in the interest of the city of Reno. Neither is it admitted that the acts of the city council in accepting that bid and agreeing to let the proposed contract were "prudent and for the public weal." The contention of the respondents, on the contrary, is that there can be no lowest bid where there is only one bid, nor where there are several bids for several radically different things, and that public experience in municipal affairs justifies the assertion, without charging any want of good faith in a particular instance, that it is not prudent nor for the public weal to permit a city council to make a contract of magnitude, with a proviso for future omissions of work, with such a reduction in the price as may be privately agreed upon between the contractor and the city council. If the subject of modifications is, upon this record, before this court, it is respectfully submitted that appellants have neither reviewed

the authorities cited by the lower court, nor cited any to sustain its contention that such a radical departure from an accepted bid is permissible. The extent of allowable modifications is clearly indicated by this court in *Sadler* v. *Eureka County*, 15 Nev. 39, and I have no desire or intention of reviewing either the argument or authorities cited to show that the modifications—that is too mild a term to express the facts—the substitute of a new contract for the one proposed by the bid, is without authority or precedent, and is, in fact, a letting without any bidding whatever.

XI. If the act of March 8, 1897, incorporates within itself and makes applicable the act of February 19, 1867, then there can be no question of the correctness of the opinion and finding of the court below. Can there be any serious question on that point? "The city council may reject any and all bids and readvertise as provided by law in similar cases." (Stats. 1897, p. 60.) What "law in similar cases" is referred to? There is only one "law in similar cases" on our statute books and that is the act of February 19, 1867 (Gen. Stats. 1972), which the legislature intentionally adopted into the city charter and clearly refer to in section 35 thereof, as cited above. And that "law in similar cases" was construed by this court in the case of *Sadler* v. *Eureka County*, 15 Nev. 39, in the following language, which is found on page 44: "The truth is, that under the provisions of the statute, the commissioners, previous to the letting of any contract for the erection of a public building, should always adopt a plan and specifications, and see that they call for the erection of such a building as may be required. When these have been considered and adopted, the advertisement should call for bids in accordance therewith." That construction of the law establishes the rule under it, and that decision is quoted by the court below and has been followed. It is contended by appellants that the act of 1867 and the act of 1897 are not *in pari materia*. The legislature evidently intended that they should be when it referred back to the act of 1867 in the act of 1897 by saying "as provided by law in similar cases," and also by the very plain wording of section 16 of the act of 1897. I need not cite authority to the effect that the law does not favor repeals by implication—that is a

well-established and elementary principle.   Section 16 of the
act of 1897 incorporates section 1972 of the General Statutes,
and there is no express exception thereto, and no express
repealer thereof.   It is the law, if it can be harmonized.   In
a case almost identical with the case at bar, the Supreme
Court of Nebraska said:   " The law is the best expositor of
itself that every part of it is to be taken into view for the
purpose of discovering the mind of the lawgiver, that the
details of one part may contain regulations and subject
matter restricting the intent of general expressions or words
in another part of the same law, and, hence, that every part
of the law is to be considered, and the legislative intent is to
be extracted from the whole of it."   (*People* v. *Commissioners*,
4 Neb. 159.)   In *People* v. *Auditor*, 3 Neb. 312, the court says,
p. 322:   " These several acts must be taken as statutes *in
pari materia* and construed together as one law.   This is a
well-settled rule of law in respect to statutes relating to the
same subject matter."   (*Town of Ottawa* v. *La Salle*, 12 Ill.
341; Dwarris on Statutes, 674; Bacon's Abridgement, title
Statutes " D "; *Bown* v. *Lease*, 5 Hill, 221; *Planters' Bank* v.
*State of Miss.*, 6 Smed. & M. 628; *Hirn* v. *State of Ohio*, 1
Ohio St. 21.)

XII.   "Even if there had been the requisite notice and
opportunity for competitive bidding, the contracts involved
in this action are unauthorized by reason of the changes
which were made by private agreement after the bids were
opened.   It is manifest from a comparison of the proposals
and the proposed contracts that there have been material
changes.   It may be true, as claimed for the city council,
that these changes have been in the interest of the taxpayers.
The answer to this is that the legislature has adopted a
method for securing the best contract for the taxpayer, and
the council cannot substitute its judgment for that of the
legislature.   The contract must be the one for which bids
were solicited, and, when it is materially different therefrom,
it ceases to be the contract bid upon, and is a new contract,
let without notice or opportunity for bidding.   Such contracts
are illegal and void."   (Quoted from Judge Cheney's opinion
in this case; *McBrien* v. *City of Grand Rapids*, 56 Mich. 95,
98; *Dickinson* v. *Poughkeepsie*, 7 Hun, 1; *Dickinson* v. *Pough-*

*keepsie*, 75 N. Y. 65; *Nash* v. *St. Paul*, 11 Minn. 174; *Knee-lands* v. *Furlong*, 20 Wis. 437; *Zottman* v. *San Francisco*, 20 Cal. 104; *Mazet* v. *Pittsburg*, 137 Pa. St. 548; *Van Reipen* v. *Mayor of Jersey City*, 33 Atl. 741; *People* v. *Commissioners of Buffalo Co.*, 4 Neb. 150; *Harper* v. *Tiffin Natl. Bank*, 44 N. E. 95; 1 Dill. Mun. Corp., 4th ed., sec. 89, 91, and note; 15 Am. & Eng. Ency. Law, pp. 1090–1093; *Appleby* v. *Mayor*, 15 How. Pr. 428; *Moore* v. *Mayor*, 4 Hun, 545; *In re Eager*, 46 N. Y. 100; *Miller* v. *Pearce*, 2 Cin. Sup. Ct. Rep. 44.)

By the Court, BELKNAP, J.:

The city council of the city of Reno submitted the question to the electors whether or not the city should borrow the sum of $150,000 for the purpose of procuring water and the erection of water works for the city, and at the same time submitted the question whether or not the city should borrow the sum of $20,000 for the purpose of establishing an electric light plant for lighting the streets and houses of the city. Both questions having been answered in the affirmative, the council caused the following notice to be published: "Bids Wanted. Notice is hereby given that bids will be received until 8 o'clock p. m. of June 13th, 1898, for the purchase of Reno water works bonds in the sum of $130,000, or any portion thereof not less than $500; also, for the purchase of Reno electric light bonds in the sum of twenty thousand ($20,000) dollars, or any portion thereof not less than the sum of $500; also, written proposals, with plans and specifications, to construct a water system for the city of Reno, to be paid for with bonds of the city of Reno, at not less than their par value; also, for written proposals, with plans and specifications, to construct and establish an electric light plant for the city of Reno, to be paid for with the bonds of the city of Reno at not less than their par value. All bids or proposals should be sealed, so indorsed upon the envelope as to indicate the character of the contents, and directed to ' F. B. Porter, City Clerk, Reno, Nevada.' R. S. Osburn, President City Council. F. B. Porter, City Clerk. Reno, Nevada, May 9th, 1898."

Bids and proposals, with plans and specifications, were received under the notice; and the council, believing that the

bid of the firm of Schaw, Ingram Batcher & Co. was the best, were about to enter into a contract with that firm for a water supply and water works, when this suit was commenced for the purpose of enjoining defendants therefrom. Upon the trial a decree was entered perpetually restraining defendants from entering into the proposed contract, and also with the Ft. Wayne Electric Corporation.

One of the questions presented by the appeal is whether or not it was the duty of the council to have adopted plans and specifications for a water system before receiving bids. Section 16 of the charter provides that all laws not inconsistent shall remain in full force until otherwise provided. It is claimed under this provision, that an act passed February 19, 1867 (Stats. 1867, p. 59), requiring boards of county commissioners in letting contracts amounting to $500, to advertise and let them to the lowest responsible bidder, and, when plans and specifications are to constitute part of such contract, it shall be stated in the notice where the same may be seen, is applicable to the contract in this case, and that it was the duty of the council, in obedience to this law, to have adopted plans and specifications, and thereafter to have advertised for proposals.

The law of 1867 contemplates competitive bidding, and, to secure that end, plans and specifications must be adopted before bids are invited. By the terms of that statute, contracts must be awarded to the lowest responsible bidder. By section 35 of the charter it is provided that, if the council is authorized to issue bonds for water and light purposes, they " shall proceed to publish such fact and invite written proposals with plans and specifications to construct such water system, and the person or corporation offering to provide the best permanent system of water supply for the least number or amount of said bonds, shall be deemed the lowest or best bidder. * * *" These provisions were framed upon a different theory than those governing the statute of 1867. Bidders are required to furnish their own plans and specifications. This requirement can serve no useful purpose, and would not have been inserted in the charter if contracts were to be awarded upon plans and specifications previously determined by the council. Under provisions requiring pro-

posals to be awarded to the lowest responsible bidder, the board or officer charged with the award has no discretion, except as to the responsibility of the bidder; but the provision of the charter that the bidder offering to furnish the best system of water supply for the least number of bonds shall be deemed the lowest or best bidder, commits to the council a discretionary power to determine which system is the best, and introduces an element inconsistent with competitive bidding upon plans and specifications previously adopted.  In order to determine the best system, comparisons must be made with other systems; but, if all the bids were restricted to one system, it would be impossible for the council to reach any conclusion.

We think that the council was not required to adopt plans and specifications before advertising for bids, and this provision of the law of 1867, in this respect, is inconsistent with the charter.

After the submission of the original proposal, the council, upon consultation with the firm of Schaw, Ingram, Batcher & Co., proposed that the bid of the firm should be modified by omitting the construction of a reservoir, and pipes leading to and from it, and that in consideration thereof the sum of $6,000 should be deducted from the contract price.  It was shown that the omission would be to the advantage of the city in several respects.  The firm consented to the modification.  It was the duty of the council, as agent of the city, to protect and advance its interests.  The judgment of the council was that the modification would save the city an unnecessary expense of about $6,000, and improve the proposed water system.  Upon these facts, no one can complain of the action of the council.

In the case of the proposed contract with the Ft. Wayne Electric Corporation, it is shown by the pleadings that the modifications are unimportant.

A motion has been made by respondent to strike from the record an exhibit containing the original bid of Schaw, Ingram, Batcher & Co., filed with the clerk of the city council June 13, 1898, and also the findings of the court, upon the ground that they had not been identified by the trial judge, by his indorsement, as having been read or referred to

upon the hearing of the motion for new trial. Aside from the exhibit itself, the testimony of Mr. Osburn satisfactorily shows the difference between the original bid and its modification by the firm and council. The evidence contained in the exhibits is therefore merely cumulative, but the exhibit, failing of identification, should be stricken out.

The findings mentioned in respondent's notice are the written opinion of the judge mentioned in section 340 of the civil practice act, and are properly in the record. The formal findings referred to in section 182 are different from the written opinion mentioned in section 340. (*Corbett* v. *Job*, 5 Nev. 201.)

Judgment reversed.